■ BONDED CONCRETE, INC., Appellant, v TRANSCONTINENTAL INSURANCE COMPANY, Doing Business as CNA COMMERCIAL INSURANCE, Respondent. [784 NYS2d 212]—

Carpinello, J. Appeal from an order of the Supreme Court (Benza, J.), entered February 19, 2004 in Albany County, which, inter alia, granted defendant's cross motion for summary judgment dismissing the complaint.

This declaratory judgment action between plaintiff, an insured under a commercial general liability insurance policy, and defendant, its insurer, arises out of a dispute which itself was the

subject of a recent appeal to this Court (see *U.W. Marx, Inc. v Bonded Concrete, Inc.*, 7 AD3d 856 [2004]). In that prior action, filed in mid-November 1999, plaintiff was sued by the general contractor on a school renovation project for allegedly supplying defective concrete for use in sidewalks. Shortly thereafter, plaintiff forwarded the pleadings to defendant with a demand that it provide plaintiff with a defense and indemnification.

After investigating the claim, defendant advised plaintiff, by letter dated February 7, 2000, that there was no coverage for the claim under the policy because the delivery of defective concrete did not constitute a covered "occurrence." Defendant also relied upon a number of exclusions in the policy in denying plaintiff's demand. Among the exclusions was one for property damage to "your product." Shortly before trial in the underlying action, the general contractor was permitted to amend its complaint to assert an additional claim that plaintiff violated General Business Law § 349 (deceptive business practices). The amended pleadings were not immediately provided to defendant. After defendant failed to pay the judgment rendered against plaintiff in the underlying action, plaintiff commenced the instant suit. Plaintiff now appeals from an order of Supreme Court granting defendant summary judgment dismissing the complaint.

We begin with the well-settled rule that the issuer of a commercial general liability insurance policy is not a surety for a construction contractor's defective work product (see *George A. Fuller Co. v United States Fid. & Guar. Co.*, 200 AD2d 255 [1994], *lv denied* 84 NY2d 806 [1994]). In *Fuller*, policy provisions identical to those in the case at bar were construed to negate insurance coverage to a contractor which had been sued for faulty workmanship in a construction project. Thus, precedent dictates that policies like defendant's were never intended to provide indemnification to contractors from claims that their work product was defective (see *id.* at 259). Rather, the "purpose of a commercial general liability policy . . . is to provide coverage for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product . . . is not what the damaged [party] bargained for" (*Hartford Acc. & Indem. Co. v Reale & Sons*, 228 AD2d 935, 936 [1996]).

Plaintiff cannot escape the effect of this rule. The gist of the claims in the underlying action is that plaintiff provided an allegedly defective product, namely, concrete. The damages sought were the costs of correcting the defect, not damage to property other than the completed work itself (see *Zandri Constr. Co. v*

*Firemen's Ins. Co. of Newark*, 81 AD2d 106, 109 [1981], *affd sub nom. Zandri Constr. Co. v Stanley H. Calkins, Inc.*, 54 NY2d 999 [1981]).

We are unpersuaded by plaintiff's reliance on a number of cases which stand for the proposition that a commercial general liability policy provides coverage for damages when an insured's defective product is a mere component of another product or structure (*see e.g. Apache Foam Prods. Div. of Millmaster Onyx Group of Kewanee Indus. v Continental Ins. Co.*, 139 AD2d 933 [1988]; *Penn Aluminum v Aetna Cas. & Sur. Co.*, 61 AD2d 1119 [1978]; *Marine Midland Servs. Corp. v Kosoff & Sons*, 60 AD2d 767 [1977]). Here, the subject concrete was not a component of any other larger structure. Rather, the concrete itself was the product, namely, the sidewalk. Thus, this line of cases does not assist plaintiff in its quest for a defense and indemnification.

Next, we need not devote extensive discussion to plaintiff's alternate argument that defendant's notice of disclaimer was untimely. This assertion is rendered academic by our conclusion that there is no coverage for the claims in the underlying action. Indeed, "requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed" (*Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d 185, 188 [2000]).

Finally, while we agree with plaintiff that our prior decision striking the General Business Law § 349 claim from the underlying action does not necessarily render moot its argument that it would have been entitled to reimbursement for defense costs incurred in defending that claim had coverage existed, we nonetheless find no coverage for this claim under the "advertising injury" portion of defendant's policy. That provision clearly contemplates "publication" of material that libels or slanders another or violates a person's right to privacy, torts not even alleged in the stricken cause of action. Accordingly, we affirm Supreme Court's order in its entirety.

Cardona, P.J., Mercure, Spain and Kane, JJ., concur. Ordered that the order is affirmed, with costs.