I.J. WHITE CORP., Respondent, v COLUMBIA CASUALTY CO., Appellant. [964 NYS2d 21]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered January 10, 2012, which denied defendant's motion for summary judgment dismissing the complaint, and, upon plaintiff's cross motion for partial summary judgment, declared that defendant is obligated to defend it in the underlying action, and order, same court and Justice, entered March 21, 2012, which, to the extent appealable, denied defendant's motion to renew, affirmed, without costs.

Hill Country Bakery, LLC, a nonparty to this appeal, made and distributed baked goods. As part of its baking process, Hill Country froze its products, immediately cut them, and then packaged them for distribution.

In 2006, Hill Country bought a spiral freezer system from plaintiff I.J. White Corp., a manufacturer of spiral processing equipment for use in the food industry. The purpose of the spiral freezer system was to allow freshly baked cakes to be placed on a conveyor belt and frozen within 150 minutes so that they would emerge from the system properly cooled and ready to be cut. Purportedly, however, the freezer system never operated properly. According to Hill Country, when the cakes emerged from the freezer in the allotted time, their temperature was around 20 to 25 degrees Fahrenheit rather than the 0 to 5 degrees Fahrenheit necessary for proper handling, and they were ruined upon cutting.

In 2010, Hill Country commenced an action against plaintiff, alleging that for eight months, it was unable to use the $21 million facility it had constructed specifically to house the equipment that it had bought from plaintiff. Instead, Hill Country alleged, it had been obliged to use that period to fix the equipment, and had expended an additional $1.9 million to render the equipment operable.

Plaintiff requested defense and indemnity from its insurer, defendant Columbia Casualty Co. Plaintiff's insurance policy defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." The policy also defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Defendant ultimately tendered a formal disclaimer letter, finding that the alleged

defects in the freezer did not qualify as an "occurrence" under the policy because there had been no accident. Further, defendant asserted, there had been no "property damage" within the meaning of the policy.

The IAS court properly denied defendant's motion and granted plaintiff's cross motion. Courts have held that commercial general liability (CGL) policies do not insure against faulty workmanship in the work product itself (*see George A. Fuller Co. v United States Fid. & Guar. Co.*, 200 AD2d 255, 259 [1st Dept 1994] [no "occurrence" where damage was to premises upon which construction manager/contractor performed work], *lv denied* 84 NY2d 806 [1994]). However, such policies do insure against property damage caused by faulty workmanship to something other than the work product (*id.*; *see also Transportation Ins. Co. v AARK Constr. Group, Ltd.*, 526 F Supp 2d 350, 356-357 [ED NY 2007] [analyzing case under New York law]). Plaintiff does not seek coverage simply for allegedly faulty workmanship that caused the defect in the freezer. Rather, it seeks defense and indemnity for property damage that Hill Country, a third party, alleged that it suffered because of a defect in the freezer. Indeed, in *George A. Fuller Co.* (200 AD2d 255), on which defendant places much reliance, the damage occurred to the property upon which the contractor performed the work— that is, to the work product itself. Plaintiff, by contrast, seeks coverage for the damage to the cakes, not to the freezer. This damage is precisely the kind that plaintiff's CGL policy contemplated, and therefore, the complaint properly alleges an "occurrence" within the meaning of the policy (*cf. Baker Residential Ltd. Partnership v Travelers Ins. Co.*, 10 AD3d 586, 586-587 [1st Dept 2004]). Hill Country's loss of use of the facility specifically built to house the freezer is also covered under the policy, since "property damage" is defined to include "[l]oss of use of tangible property that is not physically injured."

Furthermore, in support of its argument, defendant notes that according to Hill Country, the freezer itself did not ruin the cakes; rather, the cakes did not freeze to the proper temperature within the required time and were ruined only when Hill Country tried to cut them, not when they were in the freezer. Therefore, defendant concludes, there was no causal nexus between any occurrence (the freezer's failure to work properly) and any property damage (ruined cakes). We reject this argument, as it articulates a distinction without a difference. Although the freezer itself did not cut the cakes, the fact remains that Hill Country's product was rendered unusable as a direct result of the alleged defect in plaintiff's freezer. Hill Country's

primary purpose in buying the freezer was to quickly freeze the cakes in order to streamline the cutting and distribution process; whether the freezer itself actually ruined the cakes or simply caused them to be ruined when cut with a separate instrument is beside the point.

We have considered defendant's remaining arguments and find them unavailing. Concur—Saxe, Moskowitz and Manzanet-Daniels, JJ.

Andrias, J.P., and Abdus-Salaam, J., dissent in a memorandum by Abdus-Salaam, J., as follows: I disagree with the majority that the claims here constitute "property damage" caused by an "occurrence." Plaintiff I.J. White (White), the insured, contracted to build a spiral freezer for Hill Country Bakery's facility. The contract called for a freezer that would cool baked goods to a temperature of 0 to 5 degrees within 150 minutes. However, as alleged in the underlying complaint filed by Hill Country against White, the freezer only cooled the cakes down to 20 to 25 degrees within that time, and at the higher temperature ranges "the cakes were still too warm to cut, and attempts to cut the cakes at that range resulted in ruined product that could not be sold." The complaint further alleges that the freezer required an additional 105 minutes over the freezing time required by the contract to freeze the cakes to the desired temperature.

White's insurer does not owe a defense to White in the action brought by Hill Country Bakery. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general conditions." The Hill Country complaint, which sounds in breach of contract, breach of implied and express warranty, and fraudulent inducement, does not allege an "occurrence" as defined by the policy, but rather arises out of a contract dispute where it is alleged that the spiral freezer did not perform as required by the contract, causing Hill Country to spend additional money, including overtime wages to pay employees for extended hours to meet the demand for its products, and money to repair the freezer so that it was operational. Here, as in *George A. Fuller Co. v United States Fid. & Guar. Co.* (200 AD2d 255 [1st Dept 1994], *lv denied* 84 NY2d 806 [1994]), the policy "does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product" (200 AD2d at 259; *see also Bonded Concrete, Inc. v Transcontinental Ins. Co.*, 12 AD3d 761, 762 [3d Dept 2004] [gist of claims in underlying action is that plaintiff provided allegedly defective product]).

I am unpersuaded by White's argument, adopted by the majority, that the allegation that the cakes were ruined falls squarely within the policy's definition of "property damage." Firstly, "[w]hether examined in its totality or by a review of each cause of action (*Fuller* at 259), it is clear that Hill Country is not claiming that the freezer ruined the cakes, but is alleging that the cakes did not freeze to the proper temperature within the required time, and that attempts to cut the cakes when they were still too warm resulted in ruined product. A plain reading of the complaint reveals that Hill Country is not seeking any damages from White for ruined cakes. The Wherefore clause contains no such demand and Hill Country's disclosure in the underlying action specifies the categories of damages as approximately $1.7 million paid to White for the freezer, $1.2 million in repair costs to render the freezer operational in accordance with the contract specifications, and $700,000 in employee overtime wages. There is no category of damage for ruined product, and no category that would constitute an "occurrence" under the policy.